Brush *v.* Seguin et al.	Bowen et al. *v.* Parkhurst et al.

---

HENRY C. BOWEN *et al.,* Plaintiffs in Error, *v.* ASAHEL R. PARKHURST *et al.,* Defendants in Error.

### ERROR TO McHENRY.

Although an execution from the Circuit Court is returnable in ninety days, and the sheriff must make his levy within that time, and it is his general duty to hold the writ for that period, yet he may take the responsibility of returning it sooner, if he has made a demand of property, and if it is unsatisfied; the return will be the foundation for a creditor's bill.

The sheriff will be responsible, if his return is untrue.

A voluntary assignment of a debtor, for the benefit of creditors, will not be upheld, which authorizes a sale of the property assigned, publicly or privately, on a credit.

THE opinion of the court states the case.

24b 257
138 246

24b 257
50a 599

24b 257
158 285

24b 257
55a 270

24b 257
61a 272

24b 257
63a 316

24b 257
165 415

24b 257
80a 353

24	257
Case 2
100a ³661

17

SMITH & DEWEY, for Plaintiffs in Error.

COON & ROGERS, for Defendants in Error.

BREESE, J. This is a case in chancery. The bill was filed on the 9th day of April, 1858, and was an ordinary creditor's bill, which prayed, among other things, that an assignment made by defendants, Asahel R. Parkhurst and Perry T. Parkhurst, to their co-defendant, Rogers, might be set aside, as being fraudulent and void as to creditors.

The bill was filed upon two judgments against Parkhurst, based upon the return of two executions, returned unsatisfied. The one in favor of complainants, Bowen, McNamee & Co., was issued on the 19th of January, 1858, delivered to the officer 23rd of same month, and after personal demand by the officer, and refusal to turn out property to satisfy the same or to pay it, and after search for property, the officer, on the 10th of March, 1858, returned the same wholly unsatisfied. The other execution, in favor of complainant White, was returned unsatisfied after the expiration of ninety days, and no question arises with regard to the latter execution.

On the 22nd December, 1859, the cause was submitted to the court for argument upon the bill, answers, and replication. On the hearing of the case, the defendants moved to dismiss the bill as to complainants, Bowen, McNamee & Co., on the ground that the execution in their favor had been returned by the sheriff before the expiration of ninety days from its *teste*, which motion the court granted, and dismissed the bill as to said complainants, Bowen, McNamee & Co.; which facts, and the decision thereon, present the first question involved in the case.

The answer of the defendants, which was under oath, called for by the bill, denied all fraud, but set up a general assignment by defendants, Asahel R. Parkhurst and Perry T. Parkhurst, to their co-defendant, Henry O. Rogers, for the benefit of their creditors, consisting of a stock of goods, and notes and accounts, with preferences; which assignment provided, among other things, that the said assignee should take possession of the property, thereby "assigned, or intended so to be, and sell and dispose of the same, either at public or private sale, to such person or persons, for such prices, and on such terms and conditions, and either for cash or on credit, as in his judgment may appear best, and most for the interest of the parties concerned, and convert the same into money," etc.; which assignment the complainants claimed to be fraudulent and void as to themselves, creditors of said assignors, on account of the power therein

contained, to dispose of the property thereby assigned, upon credit.

The court decided the assignment valid, and dismissed the bill as to the remaining complainant, White; which facts, and the decision thereon, present the second question in the case.

The two foregoing issues of law presented in this case, were, in pursuance of the statute, by stipulation of the counsel of the respective parties, filed in the office of the clerk of McHenry Circuit Court, on the 22nd day of December, 1859, agreed to be certified and submitted to the Supreme Court for its decision thereon, and were duly certified thereto by the judge of said court.

We have no doubt upon either of the questions here presented. By section 36 of the chancery code (Scates' Comp. 142), it is provided, " Whenever an execution shall have been issued against the property of a defendant, on a judgment at law or in equity, and shall have been returned unsatisfied in whole or in part, the party suing out such execution may file a bill in chancery against such defendant and any other person, to compel the discovery of any property or thing in action belonging to the defendant."

All executions from the Circuit Court are, by law, returnable in ninety days from and after their date, not to any term of the court, as in some States, and as at the common law, but to the clerk's office whence it issued. The officer having it in charge has that time in which to find property to levy upon. He must make his levy within that time, for after that, the writ is powerless. In general, it is his duty to hold the writ during all that time, but he may take the responsibility of making an earlier return to it of *nulla bona*, especially after he has made a personal demand upon the defendant to turn out property, and he has refused so to do. When the return is made that the execution is unsatisfied in whole or in part, and that the defendant has no property out of which it can be satisfied, a case has arisen for the interposition of a court of chancery. His return becomes a matter of record, and is conclusive as between the parties to the judgment and the officer, only to be questioned in an action for a false return. It shows, *prima facie*, that the creditor has exhausted his legal remedy, and chancery has jurisdiction. A return cannot be compelled before the expiration of ninety days, but the sheriff may take the responsibility of doing so at an earlier day.

In *Ballentine et al.* v. *Beall*, 3 Scam. 206, this court said, a creditor, who has proceeded to judgment against his debtor, and has his execution returned unsatisfied, may file his bill in equity and reach the property and effects of his debtor not subject to

execution.  So, also, in *Miller et al.* v. *Davidson*, 3 Gilm.
522–3, *Manchester et al.* v. *McKee*, 4 ib. 515, *Alexander et al.*
v. *Tams et al.*, 13 Ill. R. 224, the same principle is decided,
and no allusion made, in either case, to the time in which the
execution was returned unsatisfied.  We think, on this point,
the statute has been strictly complied with—that the legal
remedy is, *prima facie*, exhausted by a return of *nulla bona*,
and the powers of a court of chancery properly invoked.

As to the other question, we had occasion, in the case of
*McIntire* v. *Benson et al.*, 20 Ill. R. 500, to examine fully the
doctrine applicable to voluntary deeds of assignment.  We
find some diversity of opinion both on the point we ruled in that
case, and the one now presented.

The deed in that case contained a clause that the assignee
should be responsible only for his actual receipts and willful de-
faults.  This we held, made the deed fraudulent and void *per se.*

The deed of assignment, in this case, contains this clause,
after directing the assignee to take possestion of the assigned
property : " the assignee shall sell and dispose of the same,
either at public or private sale, to such person or persons, for
such prices, and on such terms and considerations, and either
for cash or *credit*, as in his judgment may appear best, and most
for the interest of the parties concerned, and convert the same
into money."

Our statute of frauds and perjuries provides that, " every
gift, grant, or conveyance of lands, tenements, hereditaments,
goods and chattels, etc., had and made or contrived of malice,
fraud, covin, collusion or guile, to the intent or purpose to delay,
hinder or defraud creditors of their just and lawful actions,
suits, debts, accounts, damages, etc., shall be deemed and taken
only as against those who might be in any wise disturbed, hin-
dered, delayed, or defrauded, to be clearly and utterly void."

There has been, in the different States, a contrariety of
decisions on such a clause in a voluntary assignment.  In New
York, it was held at one time by Chancellor Walworth, in
*Rogers* v. *De Forest*, 7 Paige, 272, that such a clause did not
vitiate the assignment.  The Court of Appeals, however, took
a different view, and held such a clause to avoid the whole
assignment, its tendency and effect being to hinder, delay and
defraud creditors, within the meaning of the statute.  And
there is reason in this.  The assignment withdraws all the
debtor's property from the reach of legal process, and leaves it
where the creditors cannot reach it in any other manner than
by the exercise of the discretion of the assignees.  The assignee
has it in his power to place the creditors at defiance, until he shall
have converted the property into the means of payment at private

sale on credit, on such terms as he in his judgment may deem best, and most for the interest of the parties concerned. This power to sell at private sale, on the most advantageous terms, involves a right to delay the sale as long as the assignee thinks proper. The sale may be made on any terms of credit he thinks best, and in this way the creditors may be indefinitely hindered and delayed. An insolvent debtor ought not to have the power, under color of providing for his creditors, of placing his property beyond their reach, in the hands of trustees of his own selection, and take away the right of the creditors to have the property converted into money for their benefit, without delay. They alone should have the right to determine whether the property shall be sold on credit, and any conveyance which takes away this right, ought not to be upheld; for it is a conveyance to hinder and delay creditors, and within the very teeth of the statute.

These same views were presented and enforced by the Court of Appeals of New York, in the case of *Nicholson* v. *Leavitt*, 2 Selden, 510, and we concur in the reasoning in that case. In Alabama, and perhaps in some other States, the ruling has been different, but we are satisfied, from the reasons we have given, that the clause in question renders the deed inoperative and void.

We have no law in this State expressly authorizing voluntary assignments, but they have been generally upheld for the benefit of creditors—never to their disadvantage. When it is apparent from the provisions of the deed, the assignee is not held to his just accountability, as in the case of *McIntire* v. *Benson*, or unusual clauses are inserted, which are always calculated to throw suspicion upon the transaction, or where some benefit is reserved to the assignor himself, to the injury of his creditors, such deeds are not sustained. These assignments are generally adopted by merchants and traders in almost all the States, as ordinary means of providing for creditors. The debtor, released by a fair assignment from the burden of his debts, his heart is lightened of a weight pressing him to the earth, and he is again at liberty to apply his energies to new pursuits, and in other occupations. Justice Story, in *Helsey* v. *Whitney*, 4 Mason, 206, speaks of them as encouraged by the common law. And Kent, Chancellor, in *Nicoll* v. *Mumford*, 4 Johns. Ch. 522, says, " The assignment is to be referred to an act of duty, attached to his character of debtor, to make the fund available for the whole body of the creditors."

In many of the States, they are regulated by express statute, and in all, have been approved and recognized. The essential requisite to their validity is, that they must be *bona fide*, and

not to delay, hinder, or defraud creditors. This deed does delay and hinder them in the manner we have indicated. It cannot therefore be sustained. The decree of the court below is reversed, and the cause remanded.

*Judgment reversed.*